## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ANGELA CONTI-HARDING, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | Cause No. 6:06-CV-27 |
| | § | |
| EDEN RELOCATION, INC. AND | § | |
| UNITED EXPRESS MOVING | § | |
| SYSTEMS, INC., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is Defendants Eden Relocation, Inc. and United Express Moving Systems, Inc.'s Motion for Partial Summary Judgment (Doc. No. 29). The Court, having considered said motion, is of the opinion that partial summary judgment should be granted in part and denied in part.

## BACKGROUND

This lawsuit arises from the transportation of household goods owned by Plaintiff Conti-Harding from Tracy, California to Alba, Texas by Defendant United Express Moving Systems, Inc. ("United Express"), and a dispute over whether the Defendants' liability for damages to Plaintiff's belongings is limited under a bill of lading and the Carmack Amendment to the Interstate Commerce Act.

In June 2005, Plaintiff initiated an Internet request for a rate quote from United Express to ship her household items from California to Texas. United Express responded to Plaintiff's request and the two negotiated details of the transaction. The facts are in dispute regarding the details of the parties' negotiations. Defendant United Express maintains that, during these negotiations, United Express's employee would have explained Plaintiff's choices of liability coverage and would have sent Plaintiff a booklet discussing Plaintiff's rights as a shipper and information regarding the availability of additional insurance. Plaintiff denies that she was ever told about her "choices of liability" and also denies ever having received a booklet discussing her rights as a shipper and the availability of additional insurance.

On the day of her move and immediately prior to the transportation of her household goods, Plaintiff was presented with and signed a Uniform Household Goods Bill of Lading and Freight Bill (the "Bill of Lading") and a Moving Contract with United Express Moving Systems, Inc. (the "Moving Contract"). The Bill of Lading includes a pink box with red lettering that invites a shipper to select between two options for liability coverage: "Option 1" provides for "Full (Replacement) Value Protection" and "Option 2" provides for "Released Value of 60 Cents Per Pound Per Article." (Defs.' Mot., Ex. A-1.) Both options provide a space in which the shipper may write in the value of his or her shipment. The Bill of Lading signed by Plaintiff indicates that Plaintiff selected Option 2, which states: "The value of my shipment is: .60/LB." Plaintiff's signature appears in the pink box underneath

a caption that states: "Your signature is required here: I acknowledge that I have . . . declared a value for my shipment and selected a deductible amount, if appropriate . . . ."

In addition to signing the Bill of Lading, Plaintiff signed a Moving Contract with United Express.  (Defs.' Mot., Ex. A-2.)  Plaintiff also initialed a paragraph on the Moving Contract that states:

> **Basic Valuation Coverage: 60 Cents per Pound per Article**
> Shipper is automatically covered on their shipment for the basic valuation liability to be a maximum of 60 cents per pound per article.  Shipper may elect to purchase a higher limit of liability.  However, by signing below, shipper agrees that they do not wish to purchase additional valuation and request [sic] the basic coverage as provided free of charge.

United Express states that, during Plaintiff's review of the Moving Contract and the Bill of Lading, one of United Express's employees explained to Plaintiff her two options for liability coverage prior to asking her to sign the documents.

Plaintiff admits that she signed the Bill of Lading and Moving Contract.  Plaintiff argues, however, that at the time she was presented with the Bill of Lading, Option 1 had already been "deleted" with a squiggly line and the amount of ".60/LB" had been pre-written in the blank for Option 2.  Plaintiff denies that any United Express employee ever explained that she had an option for liability coverage, and she denies that she was ever afforded an opportunity to choose additional insurance coverage.

Plaintiff's First Amended Complaint alleges that most of her household items were damaged by United Express and subcontractor Eden Relocation, Inc. ("Eden") at some point

during the move.  The Amended Complaint brings claims against United Express and Eden for violation of the Carmack and Cummins Amendments to the Interstate Commerce Act and for intentional infliction of emotional distress.  In their present motion, Defendants move for partial summary judgment on the questions of whether United Express met all requirements under the Carmack and Cummins Amendments to limit its liability to 60 cents per pound, whether Eden Relocation, Inc.'s liability should also be limited to 60 cents per pound, and whether Plaintiff's claim for intentional infliction of emotional distress is preempted by the Carmack Amendment.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The moving party must show initially that there is no genuine issue of any material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 256 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the moving party.

*Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  The moving party may also meet its summary judgment burden by pointing to the absence of evidence supporting any nonmovant party's claim.  *Celotex Corp.*, 477 U.S. at 325.

Once the moving party has satisfied its burden, the party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in its pleading, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The non-movant must also articulate the precise manner in which evidence he sets forth supports his claims.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  If the non-movant fails to set forth specific facts to support an essential element in that party's claim an on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322–23. **SIGNED this 16th day of April, 2007.**

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc*., 164 F.3d at 961.  The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports its claim. *Ragas*, 136 F.3d at 458.  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.   Irrelevant or unnecessary factual disputes should not be considered.  *Id*.

## **DISCUSSION**

**A.      Liability Limitation**

Under the Carmack Amendment to the Interstate Commerce Act, a carrier who transports goods is liable for the actual loss or injury to the property caused by the receiving or delivering carrier.  49 U.S.C. § 14706(a)(1).  The Carmack Amendment, however, allows a carrier to limit its liability if the carrier: (1) maintains an appropriate tariff within the prescribed guidelines of the Surface Transportation Board; (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt of bill of lading prior to moving the shipment.  *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003); *see also Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000); *Johnson v. Bekins Van Lines Co.*, 808 F. Supp. 545, 548 (E.D. Tex. 1992), *aff'd*, 995 F.2d 221 (5th Cir. 1993); *Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co.*, 376 F. Supp. 2d 715, 721 (S.D. Tex. 2005).

Defendants argue that there is no genuine issue as to whether they have met these requirements and that Defendants are entitled to a judgment that their liability is limited to 60 cents per pound as provided in the Bill of Lading.  It is undisputed that the Defendants issued Plaintiff a bill of lading prior to moving the shipment.  Accordingly, the Court considers whether the evidence satisfies the first three elements under the Carmack Amendment.

### 1.    Maintain a Tariff

Under the first element, United Express must maintain a tariff in accordance with the Interstate Commerce Act.  Under 49 U.S.C. § 13702(a), a mover of household goods should maintain a tariff containing the rate for transportation.   Currently under 49 U.S.C. § 14706(c)(1)(B), "[if] the motor carrier is not required to file a tariff with the [Surface Transportation] Board, it shall provide . . . to the shipper, on request of the shipper, a written or electronic copy of the rate classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier is based." Accordingly, because tariffs are no longer filed, the shipper generally has the burden to request a copy of the carrier's tariff.  *See Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co.*, 376 F.Supp.2d 715, 722 (S.D. Tex. 2005) (citing *Fireman's Fund McGee v. Landstar Ranger, Inc*., 250 F. Supp. 2d 684, 689 (S.D. Tex. 2003)).

In this case, United Express has produced no evidence that it maintained a tariff as required under 49 U.S.C. § 13702(a).  Though United Express is not required to file a tariff with the Surface Transportation Board, it must continue to maintain a tariff available for a shipper's inspection.  Here, though the Bill of Lading notes that a tariff is incorporated into the agreement, none of United Express's summary judgment evidence indicates the actual existence of a tariff.  Indeed, no affiant acknowledges the existence of a tariff, and no tariff is attached as an exhibit.  Instead of providing evidence that it maintained a tariff for inspection, United Express only argues that Plaintiff never requested a tariff and therefore

United Express has satisfied the first prong of the Carmack analysis.  Whether Plaintiff requested an opportunity to examine the tariff is immaterial, however, to the question of whether United Express actually maintained a tariff.  Accordingly, a genuine issue of material fact exists as to the first element.

### 2.      Shipper's Agreement as to Choice of Liability

Plaintiff concedes that she signed the Bill of Lading and initialed and signed the Moving Contract, each of which clearly indicate that the carrier's liability is limited to 60 cents per pound.  Moreover, plaintiff does not dispute that she was aware that she was entering into a contract for the transportation of goods at the time she signed the Bill of Lading and Moving Contract.  Accordingly, the Court finds that no genuine issue of material fact exists as to whether United Express obtained Conti-Harding's agreement as to her choice of liability.  *See Johnson*, 808 F. Supp. at 549 (noting that, in the absence of fraud or deceit, a shipper cannot avoid a contract on the grounds that he did not read it once the shipper is aware that the document he is signing is a contract for transporting goods); *Donovan v. Mercer*, 747 F.2d 304 n.4 (5th Cir. 1984) (noting that it is a "long standing and generally accepted principle of contract law that, absent fraud or mental incompetence, a person who intentionally signs a document is bound by its contents, whether or not he in fact read the document"); *Jefferson v. California Dept. of Youth Authority*, 48 P.3d 423, 425 (Cal. 2002) ("'The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and

is estopped from saying that its provisions are contrary to his intentions or understanding.'"

(quoting *Palmquist v. Mercer*, 43 Cal. 2d 92, 98, 272 P.2d 26 (1954))).

### 3.   Opportunity to Choose Carrier's Liability

Under the third element, the carrier must give the shipper a reasonable opportunity to choose between two or more levels of liability.  A shipper has a reasonable opportunity to choose between two or more levels of liability if the shipper is given "reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice."  *Hoskins*, 343 F.3d at 779 (quoting *Hughes v. United Van Lines*, 829 F.2d 1407, 1419 (7th Cir. 1987)). "In addition, any limitation of liability must be brought to the attention of the shipper before the contract is signed, and the shipper must be given a choice to contract, with or without, the limitation of liability in the movement of his goods." *Hughes*, 829 F.2d at 1419–20.

The facts as to whether Conti-Harding had a reasonable opportunity to choose between levels of liability are in dispute.  Plaintiff argues that United Express failed to provide her with reasonable notice that she had a choice of liability coverage and failed to provide her the opportunity to obtain information to make a deliberate and well-informed choice.  Conti-Harding states in her affidavit that, contrary to the Defendants' assertion, she did not receive a booklet discussing the availability of additional insurance and no United Express employee ever told her that she had a choice of liability coverage.  (Pl.'s Resp., Ex. A.)  Plaintiff states that the first notice she received of any option in liability coverage was

when she was asked to sign the pre-completed Bill of Lading on the day of her move. Plaintiff states in her affidavit that United Express failed to arrive on the scheduled move date, and after United Express re-scheduled to pick up her goods the following day, United Express's truck arrived later than promised.  Plaintiff indicates that, on the day of her move, she was under time pressure to vacate her home because "the new owners of the house were scheduled to move in and [she] had to be out of the house," and that this pressure was further exacerbated by United Express's delays.  Plaintiff further indicates that she was not presented with the Bill of Lading and Moving Contract until after all of her belongings had been loaded onto a truck, at which time the foreman simply pointed out where to sign and initial the documents.  Plaintiff indicates that this was the first time she had ever seen the Bill of Lading.  She further states that at no time did anyone explain or offer additional insurance.

The Court finds that Plaintiff's evidence is sufficient to create an inference that, under the circumstances, Plaintiff neither had reasonable notice of an option for liability coverage, nor did she have an opportunity to obtain information necessary to make a deliberate and well-informed choice of liability coverage.  Accordingly, the Court concludes that there remains a genuine issue of material fact as to whether Plaintiff had a reasonable opportunity to choose between two or more levels of liability.  The Defendants' motion for summary judgment on the question of whether United Express's liability is limited to 60 cents per pound is denied.

### B.      Eden Relocation, Inc.'s Liability Under Bill of Lading

Defendants ask the Court to consider whether any limitation of liability that applies to United Express by virtue of the Bill of Lading should also apply to limit Defendant Eden Relocation's liability.  In general, federal courts have held that, under other federal laws providing for limits to carrier liability, a carrier's employees, agents, and subcontractors can claim protection of a limitation of liability provision if the services provided are in furtherance of the contract of carriage. *See Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir. 1977) (holding that limits to airline liability under the Warsaw Convention apply to employees and agents of airlines); *McCaskey v. Continental Airlines, Inc.*, 159 F. Supp. 2d 562, 579 (S.D. Tex. 2001) (holding that Warsaw Convention protects employees and independent contractors who are performing services in furtherance of the contract of carriage); *Alleyn v. Port Authority of New York*, 58 F. Supp. 2d 15, 23 (E.D.N.Y. 1999) (noting that Warsaw Convention protects agents of a carrier who are performing services in furtherance of the contract of carriage).  One court has concluded, with respect to the Carmack Amendment, that agents and subcontractors of the principal carrier named on a bill of lading are similarly protected from liability to the extent allowed in the bill of lading.  *See Dictor v. David & Simon, Inc.*, 130 Cal. Rptr. 2d 588, 601 (Cal. Ct. App. 2003).

In this case, it is undisputed that Eden Relocation was a subcontractor hired by United Express to provide unloading services in furtherance of the parties' Moving Contract and Bill of Lading.  Therefore, having considered the law on the matter and the admitted facts, the

Court concludes that, should it be found that the Bill of Lading limits United Express's liability to 60 cents per pound, and should Eden be found liable for any of Plaintiff's injuries, Eden's liability would be limited to the same extent as that of United Express.

### C.    Plaintiff's Claim for Intentional Infliction of Emotional Distress

Finally, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress is preempted by the Carmack Amendment.  The Defendants are correct.  *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993) (holding that the Carmack Amendment preempts state law claims arising from the interstate shipment of goods, including claims for intentional infliction of emotional distress).  Accordingly the Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment is denied in part and granted in part, as noted herein.

**It is SO ORDERED.**

**SIGNED this 16th day of April, 2007.**


_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE